IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| KINERA LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO.: |
| | ) | |
| DOLLAR GENERAL | ) | 3:06-CV-1147-MHT |
| CORPORATION, | ) | |
| d/b/a DOLGENCORP, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT DOLGENCORP, INC.'S BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Christopher W. Deering
Ryan M. Aday
**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
One Federal Place
1819 5th Avenue North, Suite 1000
Birmingham, Alabama 35203
Phone: (205) 328-1900
Facsimile: (205) 328-6000

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. STATEMENT OF UNDISPUTED FACTS ............................................................... 1

III. ARGUMENT ................................................................................................................ 5

    A. Summary Judgment Standard: ............................................................................... 5

    B. Plaintiff's failure to promote claim fails as a matter of law. ............................. 6

        i. Plaintiff cannot sustain a *prima facie* case of discriminatory failure to promote. ........................................................................................ 6

            a. Plaintiff cannot show that she was qualified for the Assistant Store Manager position. .............................................................................. 6

            b. Plaintiff cannot show that any non-minority who was equally or less qualified was promoted to the Assistant Store Manager position. ...... 7

        ii. Plaintiff has no evidence that Dolgencorp's legitimate, nondiscriminatory reason for promoting Ms Tally to the Assistant Store Manager position is pretextual. ................................................................. 8

    C. Dolgencorp is entitled to summary judgment on Plaintiff's Title VII retaliatory discharge claim. .................................................................................... 11

        i. Plaintiff did not engage in any statutorily protected conduct or expression because she never complained of race discrimination or engaged in any other type of protected activity prior to her termination. ........................................................................................................................ 12

        ii. Plaintiff cannot show any "nexus or causal connection" between her complaint to ERC and her eventual termination because the undisputed evidence shows that she was terminated for refusing to participate in an internal investigation. ........................................................................... 13

        iii. Even if Plaintiff could establish a *prima facie* case of retaliation, Plaintiff cannot show pretext because Dolgencorp's legitimate, nondiscriminatory reasons for her termination are undisputed. ............ 15

IV. CONCLUSION ........................................................................................................... 16

I.  **INTRODUCTION**

This is a case that should have never been filed. On December 27, 2006, Plaintiff Kinera Love ("Plaintiff" or "Love"), a former employee of Defendant Dolgencorp, Inc.[1] ("Defendant" or "Dolgencorp" incorrectly named in the complaint as "Dollar General Corporation, d/b/a Dolgencorp, Inc.,"), filed this lawsuit against Dolgencorp alleging discriminatory failure to promote under Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), as well as retaliatory discharge under Title VII. The evidence and arguments presented herein demonstrate that Love's failure to receive a promotion to the Assistant Store Manager position was not based in any way on her race, and that her termination was based on her failure to cooperate with Dolgencorp's internal investigation stemming from co-employee complaints that Love had asked for and granted unauthorized discounts on store merchandise. The evidence is undisputed and, as a result, Dolgencorp is entitled to summary judgment with respect to all claims asserted in Love's Complaint.

II. **STATEMENT OF UNDISPUTED FACTS**

1.  On March 3, 2005, Love was hired as a Store Clerk at Store No. 6519 located in Opelika, Alabama. *See* Dolgencorp Employment Form, Exhibit "1" of Dolgencorp's Evidentiary Submission; Love Depo. at 21; Exhibit "2" of Dolgencorp's Evidentiary Submission.

2.  Love acknowledged that she received and understood the contents of Dolgencorp's 2005 Employee Handbook (the "Handbook"), and that she was provided

---

[1] Defendant Dollar General Corporation was not Plaintiff's employer and, therefore, is incorrectly named in the Complaint. Plaintiff's employer was Dolgencorp, Inc., and accordingly, Dolgencorp's Motion for Summary Judgment is on behalf of Dolgencorp and Dollar General Corporation to the extent required, if at all.

with a copy of the Handbook. *See* Acknowledgment Form, Exhibit "3"; Love Depo. at 24-27.

3. On or about July 23, 2005, Love was promoted from Store Clerk to Third Key, (also referred to as Lead Store Clerk) and Love accepted a transfer to Store No. 6665 located in Auburn, Alabama. *See* Love Depo. at 30, 33.

4. Prior to transferring to the Auburn store, Love had the opportunity to work with Jeff Jennings ("Mr. Jennings"), the Store Manager of the Auburn store. *See* Love Depo. at 34-35. Love "liked" working with Mr. Jennings, and her previous work experience with Mr. Jennings was one of the reasons why Love decided to accept the transfer to the Auburn store. *See* Love Depo. at 35.

5. Love received a pay raise as a result of her promotion to Third Key. *See* Love Depo. at 32-33.

6. Charles McDonald ("Mr. McDonald"), Dolgencorp's District Manager over the Auburn and Opelika stores at that time, approved the recommendation to promote Love to Third Key. *See* Declaration of Charles McDonald at ¶ 6; Exhibit "4"; Love Depo. at 32.

7. After transferring to the Auburn store, Love spoke with Mr. Jennings about her interest in becoming the Assistant Store Manager. *See* Love Depo. at 42-43.

8. Mr. McDonald approved Mr. Jennings' recommendation to promote Donna Tally ("Ms. Tally") to the Assistant Store Manager position instead of Love. *See* Love Depo. at 43.

9. Ms. Tally had previous retail management experience. *See* McDonald Declaration at ¶7. Prior to working for Dollar General, Plaintiff did not have previous

2

retail management experience. *See* Plaintiff's Depo. at 114-120; Plaintiff's Interrogatory Responses at Response No. 7, Exhibit "5".

10. Love admitted that she believes that Ms. Tally received the Assistant Manager position because Ms. Tally is Mr. McDonald's niece. *See* Love Depo. at 46-47.

11. Love called Dolgencorp's Employee Response Center ("ERC") and complained that she was overlooked for the Assistant Manager position because Mr. McDonald awarded the position to his niece. *See* Love Depo. at 46-47, 67-68. Love cannot recall when she made her complaint to ERC. *See* Love Depo. at 47-48.

12. On or about October 4, 2005, Candice Harrison ("Ms. Harrison"), a Dolgencorp employee at the Auburn store, reported to Dolgencorp management that Love had tried to convince her to steal a candy bar. *See* McDonald Declaration at ¶¶ 8-9, Attachment 1.

13. Ms. Tally reported to Dolgencorp management that Love, on August 14, 2005, and on September 10, 2005, asked for unauthorized discounts on store merchandise. *See* McDonald Declaration at ¶¶10-11, Attachment 2.

14. Love does not dispute that Ms. Harrison and Ms. Tally made these reports to Dolgencorp management. *See* Love Depo. at 53-55.

15. As a result of the reports from Ms. Harrison and Ms. Tally, Dolgencorp initiated an investigation. *See* McDonald Declaration at ¶12.

16. As part of the investigation into Ms. Harrison's and Ms. Tally's allegations, on October 14, 2005, Jack Traywick ("Mr. Traywick"), an Asset Protection Supervisor, and Johnnie Todd ("Ms. Todd"), the Store Manager at Store No. 9240 in Opelika, Alabama, met with Love. *See* Love Depo. at 55; Declaration of Johnnie Todd,

Exhibit "6" at ¶ 2-3.

17. During the meeting, Love told Mr. Traywick and Ms. Todd that she would not answer any further questions without a witness or an attorney present. *See* Love Depo. at 57-58, 60.

18. After Love told Mr. Traywick and Ms. Todd that she would not answer any additional questions without a witness or an attorney present, Mr. Traywick told Ms. Love that she was being suspended for refusing to participate in an investigation. *See* Love Affidavit at p. 3, Exhibit "7";[2] Todd Declaration at ¶ 5.

19. Plaintiff's employment was terminated on October 24, 2005, for violation of company policy/procedure and inappropriate conduct. *See* Dollar General Personnel Action Form dated October 24, 2005 (the "Termination Form"), Exhibit "8". Specifically, the Termination Form indicates the following: "failed to be interviewed in a store investigation, refused to speak with the asset protection supervisor on the issues that were in question." *See id.* Plaintiff signed the Termination Form indicating that the information contained in the Termination Form is correct. *See id.*; Plaintiff's Depo. at 75-76.

20. Dolgencorp's Employee Handbook specifically states that "Insubordination, including, but not limited to, failure to follow the reasonable

---

[2] Plaintiff has contradicted her Affidavit with her deposition testimony as to whether she was told of the reason for her suspension during her meeting with Mr. Trawick and Ms. Todd. *See* Plaintiff's Affidavit at p. 3 ("When I asked him why, he [Mr. Traywick] said 'you're being suspended.' I asked him why I was being suspended and he said because I refused the investigation."); *see* Plaintiff's Depo. at 154 (testifying that Mr. Trawick did not give Plaintiff a reason for her suspension); *see* Plaintiff's Depo. at 183 (testifying that her affidavit is incorrect as to whether Mr. Trawick told Plaintiff of the reason for her suspension). Johnnie Todd, in her Declaration, has stated that Plaintiff was in fact told that she was being suspended for refusing to participate in an investigation. Plaintiff's confusion and contradictions cannot be used to refute Ms. Todd's declaration testimony that Mr. Traywick told Plaintiff why she was being suspended. Plaintiff cannot use her later inconsistencies to engineer factual disputes in the face of undisputed evidence. *See Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656 (11th Cir. 1984) (finding that affidavit contradicting prior deposition testimony a sham when the party merely contradicts prior testimony without any valid explanation).

4

instruction of your supervisor, the failure to submit to testing as required by the Company's Drug and Alcohol Policy, or <u>failure or refusal to participate in an internal investigation</u>" is an infraction where an employee may be terminated for the first offense. *See* Employee Handbook at 44-45, Exhibit "9". (emphasis added).

### III. ARGUMENT

#### A. Summary Judgment Standard:

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Mere allegations in a pleading are not enough to create a genuine issue of material fact as against a showing of evidence contrary to the allegations. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ("mere existence of *some* alleged factual dispute. . . will not defeat an otherwise properly supported motion for summary judgment . . . ") (emphasis in the original). Once the moving party has made a showing that there is no genuine issue of material fact, the non-moving party must then present specific facts creating such an issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ("summary judgment is not a disfavored procedural shortcut but an integral part of the Federal Rules"). While resolution of summary judgment motions in employment discrimination matters often involve "fact-intensive issues", the Eleventh Circuit notes that the granting of such motions, when appropriate, is proper and specifically useful to "'police the baseline'" for employment-related claims. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999); (*see also Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 n.8 (5th Cir. 1999), *cert. denied*, 120 S.Ct. 1674, 146 L.Ed.2d 483 (2000)).

5

B.  **Plaintiff's failure to promote claim fails as a matter of law.**

　　i.  **Plaintiff cannot sustain a *prima facie* case of discriminatory failure to promote.**

In her Complaint, Plaintiff alleges that she was discriminatorily denied a promotion to Assistant Store Manager on the basis of her race. To establish a *prima facie* case of discriminatory failure to promote under Title VII, Plaintiff must show that: (1) she is a member of a protected minority; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who are not members of the protected minority were promoted. *See Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000) (citing *Taylor v. Runyon*, 175 F.3d 861, 866 (11th Cir. 1999)). While Plaintiff arguably satisfies the first and third *prima facie* elements, she cannot satisfy either the second or fourth elements and, as a result, her claim fails as a matter of law.

　　a.  **Plaintiff cannot show that she was qualified for the Assistant Store Manager position.**

Plaintiff cannot show that she was qualified for the Assistant Store Manager position. Plaintiff has merely come forth with her own subjective appraisals of her own qualifications and work performance – such self-ingratiating testimony cannot be used to establish that she was qualified for the position. *See Curtis, et al. v. TeleTech Customer Care Management (Telecommunications), Inc.*, 208 F.Supp.2d 1231, 1246 (N.D. Ala. 2002) (Black employee's assertions that her work performance was good in all relevant aspects did not constitute evidence that employer's legitimate reasons for terminating employee were pretext for discrimination, and thus employee could not maintain Title VII claim, since evidence cited by employee did not suggest that employer did not honestly and in good

6

faith believe that her work performance was unsatisfactory). Similar to the *Curtis* case, Plaintiff's own subjective appraisals of her work performance are inadequate to create a factual dispute as to whether she was qualified for the Assistant Store Manager position, and Plaintiff cannot come forth with any evidence to show that Dolgencorp did not honestly and in good faith believe that Plaintiff was not qualified for the position. What is undisputed is that Mr. McDonald, the District Manager over Plaintiff's store agreed with Mr. Jennings' assessment that Plaintiff was not qualified at that particular time for the Assistant Store Manager position. *See* McDonald Declaration at ¶ 7. Mr. McDonald and Mr. Jennings agreed that Ms. Tally would be better suited for the Assistant Store Manager position because Ms. Tally had prior retail management experience unlike Plaintiff. *See* McDonald Declaration at ¶ 7. Unlike Tally, Plaintiff had no retail management experience prior to her employment with Dollar General. *See* Plaintiff's Depo. at 114-120; Plaintiff's Interrogatory Responses at Response No. 7. Accordingly, Plaintiff has no evidence to show that she was qualified (much less equally qualified) for the Assistant Store Manger position and, as a result, Plaintiff's claim fails as a matter of law.

    b.  **Plaintiff cannot show that any non-minority who was equally or less qualified was promoted to the Assistant Store Manager position.**

Even if Plaintiff were somehow able to prove that she was qualified for the Assistant Store Manager position, Plaintiff cannot satisfy a *prima facie* case of discriminatory failure to promote because she has no evidence to show that an equally or less qualified non-minority was promoted to the Assistant Store Manager position. As discussed previously, Ms. Tally had prior retail management experience, and for this

reason, Mr. McDonald agreed with Mr. Jennings' recommendation to promote her instead of Plaintiff. *See* McDonald Declaration at ¶ 7. Not only was Ms. Tally equally qualified, she was better qualified than Plaintiff, notwithstanding Plaintiff's self-serving testimony to the contrary. As this Court is aware, the federal courts "are not in the business of adjudging whether employment decisions are prudent or fair." *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Accordingly, because Ms. Tally was not only equally qualified, but was better qualified, for the Assistant Store Manager position, Plaintiff cannot sustain a *prima facie* case of discriminatory failure to promote, and as a result, her claim must fail.

> ii. **Plaintiff has no evidence that Dolgencorp's legitimate, nondiscriminatory reason for promoting Ms Tally to the Assistant Store Manager position is pretextual.**

Even if Plaintiff could somehow support a *prima facie* showing of discriminatory failure to promote, Plaintiff has no evidence to show that Dolgencorp's legitimate, nondiscriminatory reason for not promoting her to the Assistant Store Manager position is pretext for discrimination. As discussed previously, Ms. Tally was promoted to the Assistant Store Manager position because she possessed prior retail managerial experience. Clearly, such a rationale constitutes a legitimate, nondiscriminatory reason. Therefore, even when assuming *arguendo* that Plaintiff could demonstrate a *prima facie* case and that the analysis could proceed to this point, there exists no evidence which would tend to show that Dolgencorp's legitimate, nondiscriminatory reason is pretextual.

In a failure to promote case, a plaintiff cannot prove pretext by simply arguing or even by showing that she was better qualified than the individual who received the promotion. *See Alexander*, 207 F.3d at 1339. "A plaintiff must show not merely that the

defendant's employment decisions were mistaken but that they were in fact motivated by race." *Id.* The Eleventh Circuit has explained that "'a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons . . .'" *Id.* (citing *Combs* 106 F. 3d at 1542); *see also Damon,* 196 F.3d at 1361 (emphasizing that courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").

During her deposition, when questioned as to why she believed Ms. Tally received the Assistant Store Manager position, Plaintiff said that Ms. Tally received the promotion because she is Mr. McDonald's niece, and for no other reason. *See* Love Depo. at 46-47, 67-68. When Plaintiff called ERC to complaint about not receiving the Assistant Store Manager position, Plaintiff testified during her deposition that she told ERC that Mr. McDonald "was going to look over me and give it to his niece." *See* Plaintiff's Depo. at 46-47.[3] Furthermore, Plaintiff testified that, in her opinion, the fact that Ms. Tally is Mr. McDonald's niece was the reason that Ms. Tally received the promotion. *See* Plaintiff's Depo. at 67-68. Based on her own testimony, Plaintiff never once mentioned race as being a factor in Dolgencorp's decision to promote Ms. Tally, only that, in her opinion, nepotism played a role in the decision. Plaintiff's own testimony shows that race played no role in Dolgencorp's decision not to promote

---

[3]    Q.    Okay. What did you tell the ERC?
       A.    I told them that – that I was not being treated fairly and they overlooked me, you know; and I let them know that Donna Tally is Charles McDonald's niece, and instead of him coming, you know, asking me about the position, he was going to look over me and give it to his niece; so I made a complaint about it.
       Q.    So that is why you thought she got it, because she was his niece.
       A.    Yes.
Plaintiff's Depo. at 46-47.

Plaintiff to Assistant Store Manager. As this Court is aware, nepotism is not race discrimination. *See, e.g., Holder v. City of Raleigh*, 867 F.2d 823, 825-26 (4th Cir. 1989) (rejecting "nepotism" as an impermissible hidden motive equivalent to discrimination for employer's refusal to hire more qualified black applicant); *cf, Brandt v. Shop'n Save Warehouse Foods, Inc.*, 108 F.3d 935, 938 (8th Cir. 1997) ("[I]t is not intentional sex discrimination . . . to hire an unemployed old friend who happens to be male, without considering an applicant who is neither unemployed nor an old friend and happens to be female."); *Foster v. Dalton*, 71 F.3d 52, 54, 56 (1st Cir. 1995) (upholding, against Title VII challenge, supervisor's decision to alter job description to favor his "fishing buddy" over generally more qualified black female applicant, because "Title VII does not outlaw cronyism"); *Bickerstaff v. Nordstrom, Inc.*, 48 F.Supp.2d 790, 800 (N.D. Ill. 1999) (hiring decision based on nepotism does not give rise to an inference of racial discrimination.); *U.S. Equal Employ. Com'n v. Foster Wheeler Constructors, Inc.*, 1999 WL 528196, *6 n.4 (N.D. Ill. 1999) ("Nepotism might not be a good means for making employment decisions; however, the discrimination laws are not aimed at stopping employers from using "bad" motivations, but only at stopping employers from using *discriminatory* employment motivations."). Such lack of evidence of pretext is fatal to Plaintiff's claim, and as a result, Dolgencorp is entitled to summary judgment.

Additionally, Plaintiff's vague assertion that she was better qualified for the Assistant Store Manager position because she allegedly trained Ms. Tally cannot constitute evidence of pretext. *See* Plaintiff's Depo. at 68. While a Title VII plaintiff may show pretext by presenting evidence that he/she was better qualified for a position, the evidence of superior qualifications must show a disparity such that no reasonable person,

in the exercise of impartial judgment, could have chosen the individual selected over the plaintiff for the position in question. *See Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004). Furthermore, the Plaintiff's self-serving appraisals of her own work performance cannot constitute evidence of pretext. As discussed in *Curtis*, "'the pretext inquiry is concerned with the employer's perception of the employee's performance, not the employee's own beliefs.'" *Curtis*, 208 F.Supp2d at 1246 (citing *Standard*, 161 F.3d at 1332-33). Therefore, Plaintiff's own subjective appraisals of her work performance are of no consequence and cannot be used to show pretext. Furthermore, Plaintiff has no knowledge of whether Ms. Tally had prior retail management experience, and has no evidence to dispute this. Clearly, Plaintiff's vague assertion that she "trained" Ms. Tally regarding Dollar General procedures does not meet this threshold and cannot be considered evidence of pretext. Plaintiff has come forth with no evidence which would tend to show that she was not only more qualified, let alone evidence of such weight and character to show that the disparities in qualifications are such that no reasonable person would have selected Ms. Tally over Plaintiff. Plaintiff has no evidence of pretext and, as a result, Dolgencorp is entitled to summary judgment.[4]

### C. Dolgencorp is entitled to summary judgment on Plaintiff's Title VII retaliatory discharge claim.

In addition to her discriminatory failure to promote claim, Plaintiff has also

---

[4] Although not mentioned in her EEOC Charge or her Complaint, Plaintiff testified during her deposition that she applied for an Assistant Store Manager position at a Dollar General store located in the Midway Plaza in Opelika, Alabama. *See* Plaintiff's Depo. at 61-65. Plaintiff claims that she spoke on the phone with the Store Manager, "Tim", about the position, and that "a guy named Cedric" told her about the allegedly available Assistant Store Manager position. *See* Plaintiff's Depo. at 63-64. Plaintiff does not know when she allegedly inquired into that position, or who was selected to fill that position. *See* Plaintiff's Depo. at 62-63. These vague allegations are not only outside the scope of her EEOC Charge, they are so vague as to fail to state any cognizable claim. Additionally, Plaintiff testified in her deposition that she was not suing Dolgencorp because she did not receive the Assistant Store Manager position at the Midway Plaza location. *See* Plaintiff's Depo. at 124. Accordingly, to the extent any analysis of this purported claim is warranted, such a purported claim clearly fails as a matter of law.

11

alleged in her Complaint that her employment was terminated in retaliation for her having complained to ERC about not receiving the Assistant Manager position. To satisfy a *prima facie* case for Title VII retaliation, Plaintiff must show the following: (1) she engaged in statutorily protected conduct or expression; (2) he suffered adverse action subsequent to such activity; and (3) there was a causal link between the protected conduct or expression and the adverse action. *See Berman v. Orkin Exterminating Co., Inc.*, 160 F.3d 697 (11th Cir. 1998). While Plaintiff arguably satisfies the second *prima facie* element, Plaintiff cannot satisfy either the first or third required elements, and as a result, her retaliation claim must fail.

> i. **Plaintiff did not engage in any statutorily protected conduct or expression because she never complained of race discrimination or engaged in any other type of protected activity prior to her termination.**

Plaintiff cannot satisfy the first required *prima facie* element of her retaliatory discharge claim because she never engaged in any statutorily protected activity or expression. While Plaintiff testified in her deposition that she complained to ERC after Ms. Tally was promoted to Assistant Store Manager, Plaintiff did not mention race discrimination, or any other impermissible factor, as having played a role in Dolgencorp decision not to promote Plaintiff. In fact, when asked what she told ERC, Plaintiff testified that she told ERC that Dolgencorp has "overlooked her", that "Donna Tally is Charles McDonald's niece" and that Mr. McDonald was "going to overlook me and give it [the Assistant Store Manager position] to his niece." *See* Love's Depo. at 46-47. Plaintiff never mentioned race discrimination in her complaint to ERC, and only makes general allegations of unfairness. Thus, as a matter of law, Plaintiff did not engage in any protected activity, which is fatal to her retaliation claim here. *See Brown v. City of Opelika*,

12

211 Fed.Appx. 862 (11th Cir. 2006) (finding no protected activity when the plaintiff did not mention the word "race" in connection with her complaint); *Hay v. GMAC Mortgage Corp.*, 2003 WL 22133801 *8 (E.D. Pa. 2003) (finding employee's complaint of unfair treatment, which did not mention race discrimination, was not a protected activity); *see also Satchel v. School Bd. Of Hillsborough County, Fla.*, 2007 WL 570020 *4 (M.D. Fla. 2007) (finding no protected activity in ADA case where the plaintiff never mentioned being discriminated against or retaliated against due to a disability); *Jamal v. Wilshire Management Leasing Corp.*, 320 F.Supp.2d 1060, 1078-79 (D. Or. 2004) (finding employee's complaint that her manager was a bad manager, but which did not mention age discrimination, was not a protected activity); *McBride v. Hospital of the Univ. of Penn.*, 2001 WL 1132404 *2 (E.D. Pa. 2001) (finding no protected activity when an employee made a general complaint about being treated unfairly).

      ii.      **Plaintiff cannot show any "nexus or causal connection" between her complaint to ERC and her eventual termination because the undisputed evidence shows that she was terminated for refusing to participate in an internal investigation.**

Even if Plaintiff could meet the first *prima facie* element, Plaintiff cannot satisfy the third and final required *prima facie* element because the evidence is undisputed that Plaintiff was terminated for refusing to participate in an internal investigation in violation of Company policy. Two of Plaintiff's co-employees, Ms. Harrison and Ms. Tally, submitted complaints to Dolgencorp management that Plaintiff had asked for unauthorized discounts on merchandise. Specifically, Ms. Harrison reported that Plaintiff told her that she could take a candy bar without paying for it because "it was just the two of them" in the store. *See* McDonald Declaration at ¶¶ 8-9, Attachment 1.

13

Additionally, Ms. Tally stated that on two separate occasions, Plaintiff asked for discounts on pajamas, iced tea and milk. *See* McDonald Declaration at ¶¶10-11, Attachment 2. Based on these statements from Ms. Harrison and Ms. Tally, Dolgencorp initiated an asset protection investigation. *See* McDonald Declaration at ¶12.

Mr. Traywick, an Asset Protection Supervisor, was in charge of the investigation. *See* McDonald Declaration at ¶13. Plaintiff cannot and does not refute the existence of Ms. Harrison's and Ms. Tally's statements to Dolgencorp management. *See* Plaintiff's Depo. at 53-55. As part of the investigation, Mr. Traywick, along with Ms. Todd, held a meeting with Plaintiff on October 14, 2005. *See* Plaintiff's Depo. at 55; Todd Declaration at ¶ 3; McDonald Declaration at ¶14. During this meeting, Plaintiff halted the investigation by telling Mr. Traywick that she was not going to answer any further questions without a witness or an attorney present. *See* Plaintiff's Depo. at 56-58, 60, 72. Following Plaintiff's refusal to answer questions without a witness or an attorney present, Mr. Trawick told Plaintiff that she was being suspended for refusing to participate in an investigation. *See* Todd Declaration at ¶5; Plaintiff's Affidavit. Plaintiff was subsequently terminated on October 24, 2005. *See* Termination Form.

Plaintiff cannot establish any nexus or causal connection between her complaint to ERC and her termination because it is undisputed that she refused to participate in an internal investigation. Plaintiff testified during her deposition on several occasions that she would not answer Mr. Traywick's questions without a witness or an attorney present. *See* Plaintiff's Depo. at 58, 60, 72.[5] Additionally, Plaintiff acknowledged that she was

---

[5]   Q.   Just to recap your testimony, you told Mr. Trawick that you were not going to answer any more questions without having a witness or an attorney present.?
       A.   Yes.

14

terminated for violation of company policy and inappropriate conduct. *See* Termination Form; Plaintiff's Depo. at 75-76. Plaintiff also acknowledged that she had read and understood the contents of Dolgencorp's Employee Handbook, which specifically states: "Insubordination, including, but not limited to, failure to follow the reasonable instruction of your supervisor, the failure to submit to testing as required by the Company's Drug and Alcohol Policy, or <u>failure or refusal to participate in an internal investigation</u>" constitutes a situation where an employee may be terminated for the first offense. *See* Employee Handbook at 44-45. (emphasis added). Accordingly, Dolgencorp's legitimate, nondiscriminatory reasons for Plaintiff's termination are not in dispute and, accordingly, Plaintiff cannot prove the required third element of the *prima facie* case. As a result, Plaintiff's retaliation claim must fail, and Dolgencorp is entitled to summary judgment.

>    iii.   **Even if Plaintiff could establish a *prima facie* case of retaliation, Plaintiff cannot show pretext because Dolgencorp's legitimate, nondiscriminatory reasons for her termination are undisputed.**

As discussed above, it is undisputed that Plaintiff did not engage in any statutorily protected conduct, and that Dolgencorp terminated Plaintiff's employment for refusing to participate in an internal investigation. Furthermore, Plaintiff has no evidence that

---

Plaintiff's Depo. at 58.

>    Q.   But regardless, you weren't going to answer any of his questions after he asked those few without a lawyer or a witness present?
>    A.   Correct.

Plaintiff's Depo. at 60.

>    Q.   Yes or no, you decided not to answer certain questions that Mr. Trawick asked you; isn't that correct?
>    A.   Yes.

Plaintiff's Depo. at 72.

15

Dolgencorp's policy regarding an employee's refusal to participate in an internal investigation was applied in a discriminatory manner. Plaintiff cannot undercut or even challenge Dolgencorp's legitimate, nondiscriminatory reasons for her termination because she has admitted that the reason for her termination is true – through acknowledging the reasons for her termination on the Termination Form, and testifying in her deposition that she refused to answer Mr. Trawick's questions without a witness or an attorney present. Accordingly, Plaintiff cannot show that Dolgencorp's legitimate, nondiscriminatory reasons for her termination were pretext for retaliatory animus, and as a result, her claim fails as a matter of law.

## IV.   CONCLUSION

Plaintiff cannot sustain a *prima facie* case of discriminatory failure to promote because she cannot show that she was qualified for the Assistant Store Manager position, nor can she show that non-protected employees with equal or lesser qualifications were promoted to the Assistant Store Manager position. The evidence shows that Ms. Tally's prior experience in retail management made her more qualified for the Assistant Store Manager position than Plaintiff. Additionally, even if Plaintiff could sustain a *prima facie* case, Plaintiff has no evidence which would tend to show that Dolgencorp's legitimate, nondiscriminatory reason for promoting Ms. Tally instead of Plaintiff is a pretext for discrimination.

Likewise, Plaintiff's retaliatory discharge claim fails as a matter of law. Plaintiff cannot sustain a *prima facie* of retaliatory discharge because she did not engage in any statutorily protected conduct or expression, and additionally, cannot show any nexus or causal connection between her complaint to ERC regarding the Assistant Store Manager

position and her termination. Plaintiff has admitted that she was terminated for refusing to participate in an internal investigation in accordance with Dolgencorp policy. Even if Plaintiff could sustain a *prima facie* showing of retaliatory discharge, she has no evidence that Dolgencorp's legitimate, nondiscriminatory reasons for her termination are pretext for retaliatory animus. As a result, Dolgencorp is entitled to summary judgment on all claims asserted in Plaintiff's Complaint.

WHEREFORE, PREMISES CONSIDERED, Dolgencorp respectfully requests that this Court enter an Order granting it summary judgment with respect to all claims asserted in Plaintiff's Complaint.

Respectfully submitted,

s/Christopher W. Deering
Bar No.: ASB-5555-I71C

s/Ryan M. Aday
Bar No.: ASB-3789-A54A

Christopher W. Deering, Esq.
Ryan M. Aday, Esq.
**Ogletree, Deakins, Nash,
    Smoak & Stewart, P.C.**
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone: (205) 328-1900
Facsimile: (205) 328-6000
E-mail: christopher.deering@odnss.com
E-mail: ryan.aday@odnss.com

*Attorneys for Defendant
Dolgencorp, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Lateffah Muhammad – lateefahmuhammad@aol.com

s/Christopher W. Deering
Christopher W. Deering
Bar Number: ASB-5555-I7IC
Attorney for Defendant,
Dolgencorp, Inc.

5330890.1